## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

**MATTHEW AND JONNA AUDINO**
**AND DANIEL OGLES JR.,**
individually and on behalf of all others
similarly situated,                                    Case No. 4:16-cv-00631-SMR-HCA

                        Plaintiffs,

v.

**JPMORGAN CHASE BANK, N.A.**

                        Defendant.

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## <u>MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>

TABLE OF CONTENTS

Introduction ............................................................................................................. 1

Factual Overview of Case ........................................................................................ 2

Procedural Background ............................................................................................ 3

Summary of the Proposed Settlement .................................................................... 4

    I.      Consideration for Settlement ..................................................................... 4

    II.     Settlement Class Definition......................................................................... 5

    III.   Opportunity to Opt-Out or Object to the Settlement ............................. 5

    IV.   Attorneys' Fees and Litigation Expenses ................................................. 6

The Court Should Certify the Class for Settlement Purposes ............................. 6

    I.      The Settlement Class Is Sufficiently Numerous ...................................... 7

    II.     There Are Common Questions of Law and Fact ..................................... 8

    III.   The Class Representatives' Claims are Typical of the Claims of the Class......... 10

    IV.   The Class Representatives and Their Counsel Are Adequate.............................. 11

    V.     This Case Satisfies the Requirements of Rule 23(b)(3) .......................... 12

        A.   Common Issues Predominate Over Individualized Issues ............... 13

        B.   A Class Resolution Is Superior to Other Methods of Resolution .................... 14

The Court Should Preliminarily Approve the Settlement .................................. 15

    I.      Standard for Preliminary Approval......................................................... 15

    II.     The Settlement Fairly Values the Strength of Plaintiffs' Case .............. 16

    III.   Chase's Financial Condition ..................................................................... 19

    IV.   The Complexity and Expense of Further Litigation.............................. 20

    V.     The Proposed Notice to the Class ........................................................... 20

    VI.   Plaintiffs' Proposed Schedule for Settlement Approval....................... 22

Conclusion .............................................................................................................. 23

### TABLE OF AUTHORITIES

**Cases**

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) ........................................10, 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).............................................................14

*Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988),
     *aff'd,* 899 F.2d 21 (11th Cir. 1990)....................................................................................19

*Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251 (S.D. Iowa 2001) ................9, 10

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)........................................................15

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995).......................................10, 11, 20

*Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265 (D. Minn. 2002) ............................................14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................22

*Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588 (E.D. Mich. 1996).........................................9

*General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980)..........................................10

*Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434 (S.D. Iowa 2001) ................................17

*Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013) ....................................8, 10, 11

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016) .................................15, 18, 19

*In re Aetna*, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ...............................................................19

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)....................................18

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................19

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ............................16

*In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329 (N.D. Ga. 2000)..............18

*In re Uponor, Inc.*, 716 F.3d 1057 (8th Cir. 2013)....................................................................15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005)..............15, 16

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) ...........................14

*Johnson, et al. v. GMAC Mortgage Grp, Inc.*, 2006 WL 2433474 (N.D. Iowa Aug. 21) .......16

*Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222 (S.D. Iowa 2009) ..................................9

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ...........................................................16

*Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) ...................................14

*Lamb v. United Sec. Life Co.*, 59 F.R.D. 25 (S.D. Iowa 1972) ...............................................7

*Lowers v. U.S.*, 2001 WL 1200869 (S.D. Iowa May 2, 2001) ...................................................7

*Marshall v. National Football League*, 787 F.3d 502 (8th Cir. 2015) ......................................15

*McKeage v. TMBC, LLC*, 847 F.3d 992 (8th Cir. 2017) ......................................................8, 13

*Metge v. Baehler*, 77 F.R.D. 470 (S.D. Iowa 1978) ........................................................6

*Miller v. Wells Fargo Bank, N.A.*, 2017 WL 698520 (S.D. Fla. Feb. 22) ...................................17

*Newbridge Networks Sec. Litig.*, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ...............................19

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ...........................................7, 8, 10

*Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009 (W.D. Mich. 1987) ..........................9

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992 (8th Cir. 2016) ...................8

*Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578 (N.D. Iowa 2017) .......................................11

*Smith v. U.S. Bank*, N.A., 2017 WL 698530 (S.D. Fla. Feb 22) ...............................................17

*Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004) ................................13

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ...............................................13

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ........................................................16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................................................8

## Rules and Statutes

24 C.F.R. § 203.558 .........................................................................................2, 3, 9

Fed. R. Civ. P. 23 ..................................................................................... passim

**Other Authority**

2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012) ....................................13

7AA C. Wright, A. Miller, & M. Kane,
     Federal Practice and Procedure § 1778 (3d ed. 2005) ....................................................13

Manual for Complex Litigation (Fourth) § 21.632 (2004) ....................................................16

## INTRODUCTION

After 15 months of litigating the case, the parties reached a settlement on behalf of borrowers of FHA-backed home mortgages where JPMorgan Chase Bank ("Chase") is the mortgagee or servicer and from whom Plaintiffs allege Chase unlawfully collected post-payment interest. A former federal Magistrate Judge, Hon. Morton Denlow (Ret.), presided over a day-long mediation in Chicago, Illinois and later resolved the parties' impasse with a mediator's proposal.

The Class representatives include Matthew and Jonna Audino who originally filed this action as well as Daniel Ogles, Jr. While the parties in the *Audino* case were preparing for mediation, Mr. Ogles filed a second case in the Northern District of California raising similar allegations against Chase. Through negotiations among counsel, that case was folded into this one for settlement purposes (Dkt. No. 82) and Plaintiffs' counsel in the two cases worked together cooperatively and jointly mediated and negotiated the settlement with Chase.

The settlement was not easily achieved. In fact, after this Court denied Chase's motion to dismiss (Dkt. No. 41), counsel for the parties began settlement discussions in September 2017 and have been hard at work analyzing Chase's FHA mortgage payoff data related to potential damages since that time so that both sides were able to fully evaluate settlement.

The settlement is memorialized in the Settlement Agreement attached hereto as Exhibit 2 and should be preliminarily approved under Rule 23(e) as fair and reasonable so that court-authorized notice can be sent to the Settlement Class.

### FACTUAL OVERVIEW OF CASE

"Post-Payment Interest" is mortgage interest that lenders collect for the remainder of the month *after* a homeowner pays off the full principal balance of the loan. From August 2, 1985 through January 20, 2015, the Federal Housing Administration ("FHA") allowed mortgagees to collect Post-Payment Interest from borrowers if the mortgagee first complied with 24 C.F.R. § 203.558. This regulation required the mortgagee to send borrowers a form "approved by the [FHA] Commissioner" at payoff disclosing that the borrower would be required to pay Post-Payment Interest unless they paid the outstanding balance of their mortgage on the first business day of the month. (Am. Complaint, Dkt. 82, ¶2).

Plaintiffs contend that compliance with this regulation was incorporated into Chase's uniform mortgage contract with its borrowers. (*Id.* at ¶22). Plaintiffs further alleged that the FHA provided a form Disclosure Statement for FHA-approved lenders like Chase to use, but Chase did not use the FHA's Disclosure Statement. (*Id.* at ¶¶ 24-26). Plaintiffs contend that Chase violated 24 C.F.R. § 203.558 by, in some cases, failing to give any written disclosures to borrowers that they (1) were being charged Post-Payment Interest; or (2) could avoid being charged Post-Payment Interest if they paid off their mortgage on

2

the first day of the month. In other cases, Chase gave inadequate written disclosures to borrowers that did not satisfy the requirements of 24 C.F.R. § 203.558. In either instance, Plaintiffs alleged that Chase's failure to provide an FHA-authorized written disclosure to its borrowers before collecting Post-Payment Interest was improper.

## PROCEDURAL BACKGROUND

On December 12, 2016, plaintiffs Matthew and Jonna Audino sued defendant Chase on behalf of themselves and a class of similarly situated borrowers alleging that Chase breached a uniform term in its form promissory note by collecting Post-Payment Interest without the contractual right to do so. (Dkt. 1). Chase moved to dismiss, arguing on several grounds that Plaintiffs did not state a valid breach of contract claim, but the Court denied that motion on June 27, 2017. (Dkt. 41). After Chase filed its Answer (Dkt. 49), the parties exchanged written discovery and documents. Chase then filed a motion to strike Plaintiffs' class allegations. (Dkt. 51). After that motion was fully briefed, the parties agreed to pursue resolution of the case through mediation.

On November 15, 2017, Daniel Ogles Jr. filed a Class Action Complaint against Chase on behalf of himself and a class of similarly situated California borrowers alleging the same breach of contract claim as in this case, but also asserting a claim under California's Unfair Competition Law. Because the Audinos were already scheduled to mediate with Chase, Mr. Ogles agreed to jointly with the Audinos mediate his claims against Chase.

3

A full-day mediation before Judge Denlow took place in Chicago on March 13, 2018. The parties made progress that day, but reached an impasse. Judge Denlow then made a mediator's proposal, which the parties accepted. The parties worked for weeks to negotiate and execute a final Settlement Agreement. In furtherance of the Settlement, Plaintiffs filed a conditional Amended Complaint adding Mr. Ogles as a named Plaintiff. (Dkt. 82).

**SUMMARY OF THE PROPOSED SETTLEMENT**

## I. Consideration for Settlement

The parties have executed a Settlement Agreement that provides that Chase will pay $11.22 million into a common fund, which will be used to compensate Settlement Class members; pay attorneys' fees, expenses, and Class Representatives Service Awards; and pay all fees and costs associated with class notice administration. (Ex. 2, ¶¶ 1.36 and 3.2).

As consideration for the benefit provided by the all-cash Settlement, Settlement Class members who do not opt-out will release Chase from claims co-extensive with the legal and factual claims that were or could have been asserted against Chase in the *Audino* or *Ogles* actions, and all claims concerning Post-Payment Interest on each Settlement Class Member's mortgage loan, including claims for damages, injunctive relief, interest, attorneys' fees, and litigation expenses. (Ex. 2, ¶¶ 1.28 and 10).

## II. Settlement Class Definition

Plaintiffs request the Court certify the following Class for settlement purposes only

(the "Settlement Class") under Fed. R. Civ. P. 23(b)(3):

> All persons who had an FHA-Insured Loan for which (i) the FHA-Insured
> Loan was closed before January 21, 2015; (ii) Chase or its predecessor was
> the mortgagee or servicer as of the date the total amount due on the FHA-
> Insured Loan was brought to zero; (iii) Chase collected Post-Payment
> Interest on the FHA-Insured Loan during the applicable Limitations Period;
> and (iv) the total amount due on the FHA-Insured Loan was brought to
> zero on or after July 5, 2009, and on or before March 30, 2018.

Excluded from the Class are Chase, all officers, directors, and employees of Chase, and

their legal representatives, heirs, or assigns, and any Judges to whom the Action is

assigned, their staffs, and their immediate families. (Ex. 2, ¶1.5).

If the Court does not certify the Settlement Class and approve the Settlement, then

Plaintiffs will withdraw their Amended Complaint filed for settlement purposes, the

*Audino* parties will resume litigating the case from the same posture the case was in before

the parties began discussing settlement in the fall of 2017. (*Id.* at ¶13.1). Likewise, the

*Ogles* parties will re-commence litigation of his breach of contract and UCL claims in

California. (*Id.*).

## III. Opportunity to Opt-Out or Object to the Settlement

All Settlement Class members will receive a class notice advising them of their right

to object to or opt-out of the Settlement. (*Id.* at ¶2.5). Any Class Member who wishes to

opt-out must do so in writing by submitting a signed and dated statement to the Settlement Administrator no later than 45 days after notice is mailed. (*Id.* at ¶1.23).

Similarly, any Class Member who does not opt-out of the Settlement Class may file a written objection with the Court no later than 45 days after notice is mailed. (*Id.* at ¶1.21).

## IV.  Attorneys' Fees and Litigation Expenses

The Settlement Agreement provides that Plaintiffs will submit an application for attorneys' fees and expenses in advance of the deadline to file an objection to the Settlement. (*Id.* at ¶15.1).  Any Attorneys' fees and expenses the court awards will be paid out of the Settlement Fund. Additionally, Plaintiffs intend to request the Court grant service awards to the class representatives in consideration of their work in this case that led to benefits being available for all class members and for providing a broader release. (*Id.* at ¶15.3).

### THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

To approve a class settlement, the Court must first find that the proposed settlement class satisfies Rule 23's requirements for class certification for settlement purposes.

For starters, this is the type of case for which Rule 23 was intended because class certification is a particularly important remedy in consumer cases where, as here, if class certification is denied, the costs of an individual lawsuit would exceed the recovery any individual class member could receive. *See, e.g., Metge v. Baehler*, 77 F.R.D. 470, 478 (S.D. Iowa 1978) ("For the Court to deny class action certification would defeat one of the

central purposes of Rule 23, namely 'to provide a 'device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group'") (internal citation omitted) (quoting *Lamb v. United Sec. Life Co.*, 59 F.R.D. 25, 31 (S.D. Iowa 1972)).

Beyond being the type of case that Rule 23 was designed for, this case satisfies the specific requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3) (predominance and superiority).

## I.   The Settlement Class Is Sufficiently Numerous

The numerosity requirement is satisfied if the proposed class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Various factors are relevant in analyzing 'numerosity,' including: the number of individuals in the proposed class, the nature of the action, the value of the individual claims, the inconvenience of trying each case individually, and 'any other factor relevant to the practicability of joining all the putative class members.'" *Lowers v. U.S.*, 2001 WL 1200869, *3 (S.D. Iowa May 2, 2001) (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)).

Here, the Settlement Class is comprised of persons who took out approximately 376,100 loans on which Chase collected Post-Payment Interest. (Ex. 3, Declaration of Richard Paul (Paul Decl.), ¶8). Class members are geographically spread out across the country and the value of their individual claims is insufficient to justify individual

prosecution of the claim—both of which make joinder impracticable. The numerosity requirement is thus satisfied.

Moreover, because Chase has in its possession the names of all potential class members who satisfy the proposed settlement class definition's objective criteria, Plaintiffs' proposed class is also "adequately defined and clearly ascertainable." *See McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016)). As such, in addition to being sufficiently large, the proposed class is properly defined and ascertainable, which supports certification of the Settlement Class.

## II. There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that the case present common issues of law or fact. The commonality requirement is met when the common question shared by class members is substantially related to resolving the litigation, even if class members are not identically situated. *Paxton*, 688 F.2d at 561. "There is no requirement … 'that every question of law or fact be common to every member of the class,' and indeed, "for purposes of Rule 23(a)(2) even a single common question will do.'" *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 337 (S.D. Iowa 2013) (quoting *Paxton*, 688 F.2d at 561 and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal citation and quotation omitted) (alteration removed)). "'Where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the

elements of that cause of action will be common to all of the persons affected.'" *Bublitz v. E.I. du Pont de Nemours and Co.*, 202 F.R.D. 251, 256 (S.D. Iowa 2001) (quoting *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 595 (E.D. Mich. 1996) (quoting *Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1015 (W.D. Mich. 1987))). "The burden imposed by this requirement is light and easily met in most cases." *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 227 (S.D. Iowa 2009).

Here, because this case involves a common claim for the same alleged breach of a uniform provision of a uniform contract, the questions of law and fact that would determine liability in this case are common, including but not limited to:

i)     Whether the requirements of 24 C.F.R. § 203.558(c) are conditions precedent to Chase's collection of Post-Payment Interest from FHA-borrowers;

ii)    Whether Chase's form Payoff Statements complied with the FHA regulation requiring it to provide borrowers with disclosures in "a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558(c); and

iii)   Whether Chase's collection of Post-Payment Interest without allegedly first satisfying 24 C.F.R. § 203.558(c) was a breach of the "Borrower's Right to Prepay" provision in its form contract with its borrowers.

9

At its heart, the core issue in this case is whether Chase's form Payoff Statement complies with the HUD regulations—and this question applies equally to all class members. *See Huyer*, 295 F.R.D. at 337 (commonality is satisfied by showing that bank's course of conduct giving rise to the claim affects all class members and at least one element of claim is shared by all class members); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("fact that some class members have different mortgage contracts" does not defeat commonality). While Chase raised several affirmative defenses, the issue of whether its form Payoff Statements over time were compliant is a common issue that is substantially related to resolving the litigation.

This satisfies the commonality requirement of Rule 23(a)(2).

### III. The Class Representatives' Claims are Typical of the Claims of the Class

The purpose of the typicality requirement is "to limit the class claims to those fairly encompassed by the named plaintiff's claims." *Bublitz*, 202 F.R.D. at 257 (quoting *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). If "the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory" then typicality is established. *Paxton*, 688 F.2d at 561. Typicality is "fairly easily met so long as other class

members have claims similar to the named plaintiff." *Huyer*, 295 F.R.D. at 340 (quoting *Alpern*, 84 F.3d at 1540).

Here, the breach of contract claim applicable to all Class members arises from the same alleged general practice—charging Post-Payment interest without providing the allegedly required disclosures. And Plaintiffs contend that none of the class members received the written disclosure that Plaintiffs allege is required. Thus, Plaintiffs have alleged that all the class members' Payoff Statements give rise to the same claim. *See, e.g.*, *DeBoer*, 64 F.3d at 1175 ("typicality is not altered by the different mortgage instruments held by class members").

Therefore, Plaintiffs' claims satisfy the typicality prong of Rule 23(a)(3).

## IV. The Class Representatives and Their Counsel Are Adequate

"Under Rule 23(a)(4), the class representatives and class counsel must fairly and adequately protect the interests of the class." *Sellars v. CRST Expedited, Inc.*, 321 F.R.D. 578, 605 (N.D. Iowa 2017).

Here, the class representatives, the Audinos and Mr. Ogles, share the same legal position with all Class Members and share the same general factual position related to the uniform mortgage note, payoff request, and payment of Post-Payment Interest. They thus share with the Class the common objective of recovering the Post-Payment Interest Chase collected from them. Neither the Audinos nor Mr. Ogles has any interest that would conflict with the interests of the Class.

11

Class Counsel also satisfies the adequacy requirement. Paul LLP and the Gibbs Law Group LLP both have extensive experience handling class actions, including class actions against banks. (*See* Ex. 3, Paul Decl., ¶4; Ex. 4, Declaration of Eric Gibbs (Gibbs Decl.), ¶1). Rick Paul and Eric Gibbs have both been appointed by courts across the country to the role of class counsel on dozens of occasions. (Paul Decl.,¶4; Gibbs Decl., ¶5). Further, Sam Rouse of Rouse Law P.C. adds much experience litigating in this District to ensure that out-of-state counsel fully comply with local protocols. (Ex. 5, Declaration of Sam Rouse (Rouse Decl.), ¶1). Messrs. Paul and Gibbs have submitted, along with their respective declarations, firm resumes detailing the significant experience they bring to representing this Settlement Class.

Thus, Class Counsel and the Class Representatives satisfy the adequacy of representation prong of Rule 23(a)(4).

## V. This Case Satisfies the Requirements of Rule 23(b)(3)

In addition to the requirements of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires that "the questions of law or fact common to the class members predominate over any questions affecting individual members, and that a class action is superior to other available methods to fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This subsection is often analyzed in two sub-parts, predominance and superiority.

### A.  Common Issues Predominate Over Individualized Issues

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195–96 (5th ed. 2012)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Bouaphakeo*, 136 S. Ct. at 145 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted)).

Here, Plaintiffs contend that every Class member's breach of contract claim stands or falls on the common question of whether Chase charged class members Post-Payment interest without sending them an alleged FHA-approved form in response to a prepayment inquiry, request for payoff amount, or tender of prepayment. The contracts that are alleged to have incorporated this regulatory requirement were standardized form contracts and courts within the Eighth Circuit have found that suits involving form contracts are "the classic case for treatment as a class action*." McKeage v. TMBC, LLC*, 847 F.3d 992, 999 (8th Cir. 2017) (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to

present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such") (internal quotation omitted)); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011) (affirming certification of breach of warranty claim where all class members received the same written warranty); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002) ("Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (alteration omitted) (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 692 (N.D. Ga. 1983)). Thus, the class's single breach of contract claim involves factual and legal issues that predominate over any individualized issues and satisfies Rule 23(b)(3)

## B.   A Class Resolution Is Superior to Other Methods of Resolution

For a litigation class, the superiority prong primarily focuses on the manageability of trying claims on a class-wide basis compared to an individual trial. But "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Further, the nature of the claims in this case make class resolution superior. Because the average class member's damages are small, this case presents a "negative value suit;" *i.e.*, a case where an individual suit will cost a Class member more than he or she could recover. The average amount of post-payment interest paid by the Class was less than the filing fee to assert their own claim. One of the "most compelling rationale[s] for

14

finding superiority in a class action" is "the existence of a negative value suit." *Castano v.*
*Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996). That is because where, as here, the costs
of litigating exceed the potential recovery, there is no alternative to class actions for
"fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Accordingly, this Court should certify the Settlement Class.

## THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

## I.   Standard for Preliminary Approval

Federal Rule of Civil Procedure 23(e) provides that "the court must approve any
settlement … of the claims, issues, or defenses of a certified class." Fed. R. Civ. P.
23(e)(1)(A). The "guiding principle" is that "a class action settlement is a private contract
negotiated between the parties" and thus the Court's review is limited to ensuring "that
the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair,
adequate, and reasonable to call concerned." *Marshall v. National Football League*, 787 F.3d
502, 509 (8th Cir. 2015) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d
922, 934 (8th Cir. 2005)). Indeed, "[s]ettlement agreements are generally encouraged, and
are presumptively valid." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 625 (S.D. Iowa 2016)
(citing *In re Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). This is particularly true
where, as here, the parties were aided by an experienced mediator—retired federal
Magistrate Judge Hon. Morton Denlow. *Id.*

15

The process of approving a class settlement begins with the Court making "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Johnson, et al. v. GMAC Mortgage Grp, Inc.*, 2006 WL 2433474, *1 (N.D. Iowa Aug. 21) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2004)). Later, at the final fairness hearing, the Court is required to determine whether the settlement is fair, reasonable, and adequate based on: (1) the merits of Plaintiffs' claims weighed against the settlement terms; (2) Defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). But at this stage the Court need only decide whether the settlement is "within the range of possible approval" to justify sending notice to the class. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981).

## II.  The Settlement Fairly Values the Strength of Plaintiffs' Case

"The first factor, a balancing of the strength of the plaintiff's case against the terms of the settlement is the single most important factor." *Keil,* 862 F.3d at 695. This factor weighs in favor of settlement when "the outcome of the litigation would be far from certain if the case had not settled, whereas the settlement provides substantial benefits to the class." *Id.* (quoting *In re Wireless Tel. Fed. Cost Recovery Fees LItig.*, 396 F.3d at 933; *Van Horn*, 840 F.2d at 608). Both of these prongs are satisfied here.

16

First, the outcome of this litigation is far from certain. While Plaintiffs believe strongly in the merits of their claims, a federal district court in Florida previously denied class certification of similar claims against two other banks. *See Miller v. Wells Fargo Bank, N.A.,* 2017 WL 698520 (S.D. Fla. Feb. 22); *Smith v. U.S. Bank,* N.A., 2017 WL 698530 (S.D. Fla. Feb 22). Because the various post-payment interest cases are negative value cases, the *Wells Fargo* and *U.S. Bank* decisions effectively were the death knell of those cases. And, while counsel here were pursuing a different strategy than those in Florida, there is no doubt that Chase would have featured those cases prominently in its opposition to class certification. Given that achieving class certification was a huge hurdle and uncertain to occur, the settlement "represents the safer, more certain, and less expensive route for the class. In this respect, the settlement strikes a reasonable balance between, on the one hand, the hypothetically significant but risky benefits of litigation, and on the other, the certain and immediate benefits of the class-wide relief." *Grove v. Principal Mut. Life Ins. Co.,* 200 F.R.D. 434, 446 (S.D. Iowa 2001).

Second, the recovery received at this stage of the litigation supports approval. As in all settlements, Plaintiffs wanted a higher recovery and Chase wanted to pay less. Because of the zealous advocacy on both sides, the parties walked away from the mediation without a settlement. After two weeks of staying in touch with Judge Denlow, the parties agreed to his mediator's proposal of $11.22 million and a settlement was reached. If the total settlement was distributed to Settlement Class Members (without deducting

attorneys' fees, class representative service awards, or administration costs), Settlement Class Members would receive an average per-loan recovery of approximately $29.83. Based on Plaintiffs' calculations, the Post-Payment Interest actually collected averaged $229.67. Thus, an average of approximately $29.83 recovered equates to an average, approximately 13% recovery.

Given that Class members would likely receive nothing without class certification, this settlement provides a substantial benefit to the Class. In fact, even before the two denials of class certification in related cases by the Southern District of Florida, another of Chase's competitors, Bank of America, settled similar claims for approximately 19% of their total damages. That case provides a good benchmark in that it involved similar claims; but it was settled in an environment more favorable to the class because the Florida court had not yet denied class certification in other similar cases.

So long as "[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial," "this factor weighs heavily in favor of approving the settlement and finding it to be fair and reasonable." *Huyer*, 314 F.R.D. at 627. Here, based on Plaintiffs' calculations, Class members will receive a 13% recovery, which is an "adequate percentage" in light of other class settlements within this Circuit and across the country. *See, e.g., In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 699 (E.D. Mo. 2002) (approving class settlement awarding 10% of damages owed); *In re Motorsports Merch. Antitrust Litig.*, 112

F. Supp. 2d 1329, 1335 (N.D. Ga. 2000) (approving class settlement of less than 10% of the potential damages); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (approving settlement equal to 3 to 5% of the per share recovery sought by plaintiffs and observing that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"); *In re Aetna*, 2001 WL 20928, *4 (E.D. Pa. Jan. 4, 2001) (approving settlement of approximately 10% of total damages).

Indeed, one court found that a settlement equal to "nine percent [of the estimated damages] or higher constitutes a fair settlement." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011); *see also Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery seems to be within the targeted range of reasonableness").

Plaintiffs will recover $11.22 million before major litigation expenses were incurred and in the face of very real challenges to certification and the merits. For this reason, the benefits recovered now support approval of the settlement.

## III.  Chase's Financial Condition

Chase is financially able to pay the Settlement or continue the litigation. This factor has no bearing on the analysis. *See Huyer*, 314 F.R.D. at 627.

## IV.  The Complexity and Expense of Further Litigation

If this settlement is not approved, Plaintiffs and the Class face the prospect of a long and expensive road to trial. After continued discovery, and numerous depositions, the parties' briefing on certification of a multi-state class will certainly be extensive. Expert witnesses would need to be retained to analyze large amounts of data. A class trial would likely last 7-10 days, followed by appeal, which could mean protracted litigation for the next several years before a final, non-appealable judgment would be reached.

The settlement accomplished in this matter provides the Class with the opportunity to avoid that delay, and to obtain a certain recovery now. "The parties to a class action are not required to incur immense expense before settling as a means to justify that settlement." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

This factors thus weighs in favor of approving the Settlement.

## V.  The Proposed Notice to the Class

Rule 23(e) and (h) requires that court-approved notice of the Settlement be distributed in a reasonable manner to all reasonably identifiable Class members. Here, direct mail notice is possible because Chase is able to provide the Settlement Administrator with the names and former addresses for all Class members. The Settlement Administrator will use the list of former addresses to obtain current addresses through the National Change

of Address ("NCOA") database maintained by the United States Postal Service ("USPS") or a similar database.[1]

Plaintiffs have attached a form of the mailed notice for the Court's review and approval as Exhibit 6. If approved, this postcard notice will be mailed, by first class U.S. mail, to all Class Members. The notice explains the material terms of the Settlement, including how the funds will be allocated, and further explains how to obtain additional information about the Settlement.

The Settlement Administrator also will post a long-form notice (attached as Exhibit 7) and related documents on a dedicate website established at URL www.AudinoSettlement.com to enable potential Settlement Class members to get information on the Settlement. The website will allow potential Settlement Class members to download the notice and review the Settlement Agreement. The Settlement website address will be displayed on the printed notice.

Notices that are returned as undeliverable at least seven days before the Opt-Out Deadline with a forwarding address will be re-mailed to that address. Notices that are returned at least seven days before the Opt-Out Deadline as non-deliverable but for which a new address is not indicated by the postal service, the Settlement Administrator

---

[1] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

will use a skip-trace to identify potential updated mailing addresses. If an updated address is found, the notice will be re-mailed.

Chase has consented to this form of notice and it follows the question-and-answer format recommended by the Federal Judicial Center. The content, and the proposed method of distribution, comport with Federal Rules of Civil Procedure 23(c)(2)(B), 23(e), and 23(h), as well as due process. *See generally Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-77 (1974) (due process is satisfied by mailed notice to all class members who reasonably can be identified).

Accordingly, the Court should approve the form and plan of dissemination of Class Notice concerning the proposed Settlement. After soliciting bids from Settlement Administrators to get the best quality notice for the lowest price, the parties have selected and request that the Court approve KCC LLC as Settlement Administrator. KCC LLC is highly experienced in implementing similar notice programs.

## VI.  Plaintiffs' Proposed Schedule for Settlement Approval

Plaintiffs propose a form of order that will address the schedule and course of proceedings for settlement approval. *See* Ex. 1. Chase has consented to entry of this order. In sum, the order proposed by Plaintiffs would place settlement approval on the following schedule:

| Chase to send CAFA Notice | 10 days after the filing of this Motion |
|---|---|
| Mailing of Class Notice | 30 days after Preliminary Approval Order |
| Application for fees, expenses, and service awards | 60 days before Final Approval Hearing |
| Deadline to opt-out of or object to Settlement or Fee Application | 45 days before the Final Approval Hearing |
| Chase Blow-Up Deadline | 15 days before Final Approval Hearing |
| Motion for Final Approval | 14 days before Final Approval Hearing |
| Final Approval Hearing | 120 days from preliminary approval |

## CONCLUSION

For the reasons set forth above, Plaintiffs ask the Court to enter the proposed Order attached hereto as Exhibit 1.

Dated:  June 15, 2018                    Respectfully submitted,

Ward A. (Sam) Rouse (AT 0006841)         By: */s/ Richard M. Paul III*
**Rouse Law, PC**                        Richard M. Paul III (Lead Counsel)
4940 Pleasant Street                     *(Admitted Pro Hac Vice)*
West Des Moines, Iowa 50266              Ashlea G. Schwarz *(Admitted Pro Hac Vice)*
Phone: (515) 223-9000                    **PAUL LLP**
Email:  wardrouse@rouselaw.us            601 Walnut Street Suite 300
                                         Kansas City, Missouri 64106
Eric H. Gibbs (*Pro Hac Vice*)           Phone: (816)-984-8100
Michael Schrag (*Pro Hac Vice*)          Email: Rick@PaulLLP.com
Aaron Blumenthal (*Pro Hac Vice*)        Email: Ashlea@PaulLLP.com
**Gibbs Law Group LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Phone: (510) 350-9714
Email : ehg@classlawgroup.com
Email : mls@classlawgroup.com
Email : ab@classlawgroup.com

**ATTORNEYS FOR PLAINTIFFS**

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2018, a true and correct copy of the above and foregoing was filed through the Court's ECF filing system which sent notice to all attorneys of record.

*/s/ Richard M. Paul III*
Attorney for Plaintiffs
