IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MATTHEW AUDINO, JONNA AUDINO, and DANIEL OGLES, JR., individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 4:16-CV-00631-SMR-HCA |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | ORDER ON SETTLEMENT MOTIONS |
| JPMORGAN CHASE BANK, N.A., | ) ) | |
| Defendant. | ) | |

In June of this year, after over a year and a half of litigation, the parties submitted for the Court's consideration a proposed class action settlement, [ECF No. 83]. The Court preliminarily approved the settlement, [ECF No. 91], and notice was sent to the purported class. Presently before the Court are two motions: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement, [ECF No. 95]; and (2) Plaintiffs' Motion for Approval of Attorney's Fees and Expenses, and Service Awards to Class Representatives, [ECF No. 92]. A fairness hearing was held on November 5, 2018. The matter is fully submitted and ready for decision. For the reasons stated herein, Plaintiffs' motions are GRANTED.

## I. BACKGROUND

Post-payment interest is mortgage interest that lenders collect for the remainder of the month after a homeowner pays off the full principal balance of the loan. From August 2, 1985, through January 20, 2015, the Federal Housing Administration ("FHA") allowed a mortgagee to collect post-payment interest from borrowers if the mortgagee complied with 24 C.F.R. § 203.558. That regulation required the mortgagee to send borrowers a form "approved by the [Housing and Urban Development ("HUD")] Commissioner" at payoff disclosing that the borrower would be

required to pay post–payment interest unless they paid the outstanding balance on their mortgage on the first business day of the month.  *See* 24 C.F.R. § 203.558(b)(1).

Plaintiffs contend that compliance with 24 C.F.R. § 203.558 was incorporated into the uniform mortgage contracts between Defendant JPMorgan Chase Bank, N.A. ("Chase") and its borrowers.  *See* [ECF No. 82 ¶¶ 19–20].  They further allege that the FHA provided a form disclosure statement for FHA-approved lenders like Defendant to use, but Defendant did not use the approved form.  *See id.* ¶¶ 21–23.  Plaintiffs contend that Defendant violated 24 C.F.R. § 203.558 by, in some cases, failing to give any written disclosures to borrowers that they: (1) were being charged post-payment interest; or (2) could avoid being charged post-payment interest if they paid off their mortgage on the first day of the month.  *See id.* ¶ 72.  In other cases, Plaintiffs allege, Defendant gave to borrowers inadequate written disclosures that did not satisfy the requirements of 24 C.F.R. § 203.558.  *See id.* ¶ 73.  In either instance, Plaintiffs argue that Defendant acted improperly by failing to provide an FHA-authorized written disclosure to its borrowers before collecting post-payment interest.

On December 12, 2016, Plaintiffs Matthew and Joanna Audino commenced this action against Defendant on behalf of themselves and a class of similarly situated plaintiffs.  *See* [ECF No. 1].  They alleged that Defendant breached a uniform term in its form promissory note by collecting post-payment interest without a contractual right to do so. *See id.* ¶ 6.  Defendant moved to dismiss the Audinos' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.  *See* [ECF No. 19].  The Court denied Defendant's motion on June 27, 2017.  [ECF No. 41].  After Defendant filed an Answer, [ECF No. 49], the parties exchanged limited written discovery and documents.  *See* [ECF No. 92-1 at 11].  Defendant also filed a Motion to Strike Plaintiffs' Class Allegations.  [ECF

No. 51].  However, before the Court ruled on that motion, the parties agreed to pursue resolution of this matter through mediation.

On November 15, 2017, Plaintiff Daniel Ogles, Jr., filed a class action complaint against Defendant in the United States District Court for the Northern District of California on behalf of himself and a class of similarly situated California borrowers.  [ECF No. 83-1 at 8].  Ogles alleged the same breach of contract claim asserted by the Audinos in their action, but also asserted a claim under California's Unfair Competition Law.  *Id.*  Because the Audinos were already scheduled to mediate with Defendant, Ogles agreed to join them and jointly mediate their respective claims against Defendant.  *Id.*

On March 13, 2018, a full-day mediation took place in Chicago, Illinois, before retired United States Magistrate Judge Morton Denlow, formerly of the United States District Court for the Northern District of Illinois.  *See* [ECF No. 95-1 at 7–8].  By the end of the day, the parties could not agree on the structure or amount of a settlement.  *Id.* at 8.  Judge Denlow left them with a "mediator's proposal" in an effort to bridge the remaining gap between them.  *Id.*  After Judge Denlow's follow-up efforts over the subsequent weeks, the parties ultimately accepted his proposal for the amount of the settlement.  *Id.*  After yet more negotiations, the parties finally executed a settlement agreement and presented it to the Court for preliminary approval, [ECF No. 83].  As part of the settlement, the Audinos filed a conditional Amended Complaint adding Ogles as a named Plaintiff.  [ECF No. 82].

On July 5, 2018, the Court granted Plaintiffs' requests to preliminarily approve the settlement, certify a class for settlement purposes, and provide notice to the settlement class.  [ECF No. 91].  Under the proposed settlement, Defendant has agreed to pay $11.22 million into a common settlement fund, which will be used to compensate the settlement class members; pay

attorney's fees, expenses, and class representative service awards; and pay all fees and costs associated with administering the class notice. [ECF No. 95-2 ¶¶ 1.36, 3.2]. In exchange for Defendant's $11.22 million payment, settlement class members who do not opt out of the settlement will release Defendant from claims that are co-extensive with the legal and factual claims that were or could have been asserted against Defendant in the Audino and Ogles actions, and all claims related to Defendant's collection of post-payment interest on each class member's mortgage loan. *See id.* ¶¶ 1.28, 10.

Settlement payments to individual class members will vary depending on the amount of post-payment interest they paid to Defendant. All class members will receive a "Minimum Distribution" of $5. *Id.* ¶ 5.2.1. Class members from whom Defendant collected more than $50 in post-payment interest will receive an "Enhanced Distribution." *Id.* ¶ 5.2.3. This distribution is a percentage of the common fund (less deductions for attorney's fees and other expenses), as determined by each such class member's *pro rata* share of the total post-payment interest Defendant collected from all members eligible to receive an Enhanced Distribution. *Id.*

Class members are not required to make a claim in order to receive compensation under the settlement. Defendant provided the settlement administrator, KCC LLC ("KCC"), with a list of all class members and the amount of post-payment interest each paid to Defendant. *See* [ECF Nos. 95-2 ¶ 1.20; 95-6 ¶ 3]. KCC was responsible for sending notice of the settlement to each class member. [ECF No. 95-2 ¶ 7]. KCC will also calculate and disburse settlement payments to class members who do not opt out of the settlement. *See id.* ¶¶ 5.1–5.2. Class members who wished to opt out of the class were required to do so no later than forty-five days before the Court's fairness hearing. [ECF No. 91 ¶ 11]. Class members who did not opt out could formally lodge

objections to the settlement no later than that same date. *Id.* ¶ 15. No objections were filed, and only seventeen class members opted out. [ECF No. 95-1 at 17–18].

After preliminary approval of the settlement, the parties carried out the notice program as set out in the settlement agreement and the Court's Order preliminarily approving the settlement. Defendant provided KCC with a list containing the names and addresses of all class members, associated with a total of 376,137 loans. [ECF No. 95-6 ¶ 3]. KCC processed the names and addresses through the United States Postal Service National Change of Address Database, removed 8429 duplicate records from the list, and mailed a Court-authorized notice of the settlement to addresses for the remaining 367,708 records. *See id.* ¶¶ 3–4. In the end, only 19,654 notices (or roughly 5.35% of the total notices sent) were undeliverable. *See id.* ¶ 5. In addition to mailing notice to class members, KCC also established a settlement website that contains, *inter alia*, copies of the settlement agreement; the Court's preliminary approval Order; and the Court-authorized long-form notice, which provides class members with various information about the settlement, including instructions on how to opt out and object to the settlement. *See* [ECF Nos. 95-2 ¶ 7.7; 95-6 ¶ 2].

## II. ANALYSIS

The Court's analysis as to Plaintiffs' motions will address various issues. First, the Court will address jurisdiction and venue. Second, the Court will address final certification of the proposed settlement class. Third, the Court will assess the adequacy of the settlement notice, both as to the requirements of Rule 23 of the Federal Rules of Civil Procedure, and the Class Action Fairness Act ("CAFA"). Fourth, the Court will turn to issues directly raised in Plaintiffs' motions—specifically, the fairness of the proposed settlement and, finally, Plaintiffs' request for attorney's fees, costs, and service awards to class representatives.

## A. *Jurisdiction and Venue*

As a preliminary matter, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) the proposed class consists of more than 100 members; (2) the amount in controversy exceeds $5 million, exclusive of interest and costs; and (3) at least one member of the class is a citizen of a different state than Defendant.[1]

The Court also finds that it has personal jurisdiction over Defendant. Rather than analyze the extent of Defendant's business in the state of Iowa, it is sufficient to note that, under Rule 12, a personal jurisdiction defense may be waived if it is not raised by motion before the answer or asserted in a responsive pleading. *See* Fed. R. Civ. P. 12(b). Here, Defendant did not raise a personal jurisdiction defense in its Answer or in a pre-answer Rule 12 motion. Thus, any such defense has been waived.

Finally, this Court is a proper venue for this action. Under 28 U.S.C. § 1391, venue is proper, in relevant part, in any judicial district in which the defendant resides. *Id.* § 1391(b)(1). For the purpose of this statute, a corporate defendant is said to reside in any judicial district where the defendant is subject to the court's personal jurisdiction with respect to the action in question. *Id.* § 1391(c)(2). As noted above, the Court has personal jurisdiction over Defendant for the purpose of this litigation; therefore venue is proper in this district.

## B. *Rule 23 Class Certification*

Before assessing the settlement itself, the Court must determine whether the proposed settlement class satisfies the requirements for class action certification under Rule 23. The parties propose the following settlement class:

---

[1] For example, the Audinos are citizens of Iowa. [ECF No. 82 ¶ 4]. Chase is a Delaware corporation with its principal place of business in New York. *Id.* ¶ 6.

> [A]ll persons who had an FHA-Insured Loan for which (i) the FHA-Insured Loan was closed before January 21, 2015; (ii) Chase or its predecessor was the mortgagee or servicer as of the date the total amount due on the FHA Insured Loan was brought to zero; (iii) Chase collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period; and (iv) the total amount due on the FHA-Insured Loan was brought to zero on or after July 5, 2009, and on or before March 30, 2018. Excluded from the Class are Chase, all officers, directors, and employees of Chase, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

[ECF No. 95-2 ¶ 1.5].

Under Rule 23, a motion for class certification involves a two-part analysis. First, under Rule 23(a), the proposed class must satisfy the requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). Second, the proposed class must meet at least one of the three requirements of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Parties seeking class certification "must affirmatively demonstrate [their] compliance" with Rule 23 and "be prepared to prove that" the rule's requirements are "*in fact*" satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). When determining whether to certify a class, courts may need "to probe behind the pleadings," as the analysis will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350–51 (citation omitted). Courts have broad discretion in deciding whether to certify a class. *Rattray v. Woodbury Cty.*, 614 F.3d 831, 835 (8th Cir. 2010). But certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 564 U.S. at 350–51.

1.   Rule 23(a) factors

a.   Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). When determining whether numerosity is satisfied, courts consider the number of persons involved in the class, "the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559–60 (8th Cir. 1982). "No arbitrary rules regarding the necessary size of classes have been established." *Id.* at 559. Indeed, the United States Court of Appeals for the Eighth Circuit has affirmed the certification of classes with as few as twenty members. *See, e.g., Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765–66 (8th Cir. 1971) (upholding class of 17–20 members).

Here, Plaintiffs assert that the class is comprised of borrowers for 376,137 loans. *See* [ECF No. 95-1 at 17]. The volume of class members alone should signal the impracticality of joining all class members in one action; however, other factors also support this conclusion. Class members are dispersed over a wide geographic area. *Id.* at 19. Further, the values of the class members' claims are "so small as to inhibit individuals from separately pursuing their own claims." *Portz v. St. Cloud State Univ.*, 297 F. Supp. 3d 929, 944 (D. Minn. 2018) (quoting *Glenn v. Daddy Rocks, Inc.*, 203 F.R.D. 425, 429 (D. Minn. 2001)). Specifically, Plaintiffs estimate that the average value of class members' claims is roughly $230. [ECF No. 95-1 at 14]. This value is less than the $350 it costs to initiate a civil action in federal court. *See* 28 U.S.C. § 1914(a). Considering these factors collectively, the Court finds that joinder of all class members would be impractical, and thus Rule 23(a)'s numerosity requirement is satisfied.

b.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).   "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"   *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).   Plaintiffs cannot accomplish this by merely showing that "they have all suffered a violation of the same provision of law." *Id.* at 350.   Instead, "[t]heir claims must depend upon a common contention . . . [that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*   For this purpose, "'[e]ven a single [common] question' will do." *Id.* at 359 (alterations in original) (citation omitted).   However, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted).

The Court finds there are questions of law, common to the class, that concern the interplay between the relevant HUD regulations, Defendant's form promissory notes, and Defendant's form payoff statements.   Those questions include:

1.   Whether the requirements of 24 C.F.R. § 203.558(c) are conditions precedent to Defendant's collection of post-payment interest from FHA-borrowers; and

2.   Whether Defendant's form payoff statements complied with FHA regulations requiring it to provide borrowers with disclosures in a "form approved by the [HUD] Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." 24 C.F.R. § 203.558(b)(1).

Because Defendant is alleged to have relied on form payoff statements and promissory notes, these issues are common to the entire class.   Moreover, these questions speak to the scope of Defendant's obligations to its borrowers regarding the collection of post-payment interest.   Their resolution

then feeds into the ultimate issue in this case, also common to the class—whether Defendant's collection of post-payment interest, allegedly in breach of its obligations under HUD regulations, constituted a breach of its form contract with its borrowers. For these reasons, the Court finds that the commonality requirement of Rule 23(a)(2) is satisfied.

c.   Typicality

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  When establishing typicality, "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). "The burden is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Id.* (citation omitted).

Here, Plaintiffs contend that Defendant charged post-payment interest without first providing them with the written disclosures required by HUD regulations.  By failing to do so, Plaintiffs argue, Defendant breached their contracts with Plaintiffs.  Plaintiffs assert that the claims of the entire class are premised on this same general practice, which, through the use of form payoff notices and promissory notes, Defendant applied to all class members.  Because the claims of Plaintiffs and the class arise from the same course of conduct by Defendant, the Court finds Plaintiffs have established typicality under Rule 23(a)(3).

d.   Adequate representation

Finally, the Court must consider whether Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 625 (1997). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562–63 (8th Cir. 1982).

Here, Plaintiffs allege they have suffered the same injury as the rest of the class, and there is no indication that their interests somehow conflict with those of other class members. Notably, Plaintiffs and the class share the same objectives, and their claims arise from the same general factual position. Furthermore, Plaintiffs' counsel are experienced litigators who have served as lead class counsel in numerous class action lawsuits. *See, e.g.*, [ECF Nos. 95-4 ¶¶ 3–6; 95-5 ¶¶ 2–9]. By all accounts, they have vigorously pursued this matter and reached a settlement agreement that they believe to be the best that could be achieved in this matter. Therefore, the Court finds that Plaintiffs satisfy the adequacy requirement under Rule 23(a)(4).

## 2.   Rule 23(b)

Having found that the proposed settlement class satisfies the requirements of Rule 23(a), the Court must now determine if the class satisfies any one of the requirements of Rule 23(b). Plaintiffs assert that the class satisfies Rule 23(b)(3), which allows a court to maintain a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court will address each of these elements in turn.

### a.   Common issues predominate over individualized issues

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" and "calls upon courts to give careful scrutiny to the

relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).   For these purposes:

> If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.  If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  When assessing predominance under Rule 23(b)(3), courts must determine whether the common issues in the case are "more prevalent or important" than the individual issues.  *Tyson Foods, Inc.*, 136 S. Ct. at 1045. (citation omitted).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately . . . .'"  *Id.* (citation omitted).

Although Rule 23(b)(3) does not prescribe separate considerations for classes that are to be certified for settlement purposes only, "[s]ettlement is relevant to a class certification." *Amchem*, 521 U.S. at 619.  Notably, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Id.* at 620.  "Thus, any manageability issues that might or might not arise at trial from proving liability, injury and damages on behalf of the class members are not relevant to the certification of a settlement class." *Dorado v. Bank of Am., N.A.*, No. 1:15-cv-21147-UU, 2017 WL 5241042, at *6 (S.D. Fla. Mar. 24, 2017).

Here, Plaintiffs contend that each class member's breach of contract claim turns on the common question of whether Defendant charged class members post-payment interest without first sending them an FHA-approved form in response to a prepayment inquiry, request for payoff amount, or tender of prepayment.  All class members are alleged to have received the same or

substantially similar form, thus making issues related to the form's interpretation common to the class. Also, the promissory notes that are alleged to have incorporated the relevant HUD regulations were form documents—thus, the terms of the agreements will be uniform for all class members. These issues are not only common to the class, but they are highly relevant to the class's claims in that their resolution helps delineate Defendant's obligations to the class members. In contrast, the most pertinent individual issues—notably, differences in states' laws regarding the incorporation of federal regulations into private contracts, and the causal relationship between deficient notice and each class member's damages—need not be considered in the context of a class action settlement. *See In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) ("Given the settlement, no one need draw fine lines among state-law theories of relief."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 315 (3d Cir. 2011) (same); *Dorado*, 2017 WL 5241042, at *6 ("[A]ny alleged 'individual issues relating to causation, injury and damage also disappear because the settlement's objective criteria provide for an objective scheme of compensation.'" (quoting *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, Nos. 1203, 99–20593, 2000 WL 1222042, at *43 (E.D. Pa. Aug. 28, 2000))). Accordingly, the Court finds that Rule 23(b)(3)'s predominance requirement is satisfied.

### b. Superiority of a class resolution

The superiority requirement "asks whether the class action is the best available method for resolving the controversy." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2016 WL 5394684, at *6 (D. Neb. Sept. 27, 2016). Thus, the Court "must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of

prejudice to the rights of those who are not directly before the court." 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1779, 159–61 (3d ed. 2005).

Here, the Court finds that class resolution is superior to other methods of adjudicating this matter. As already discussed, the value of class members' individual claims are, on average, less than the cost of commencing a civil action in federal court. Even for those class members who might stand to recover more than the filing fee to commence an action, there is no indication that their claims are large enough to cover the expenses of litigating against a defendant as resourceful as Chase. In short, there is minimal, if any, incentive for class members to pursue their claims individually. Additionally, the Court is not aware of any other means by which class members might seek redress, such as an administrative or regulatory claims procedure.

In conclusion, the Court finds that the proposed class satisfies the requirements of Rule 23. The Court therefore finally certifies the class, as defined in paragraph 1.5 of the settlement agreement, for settlement purposes only. The Court also confirms the prior appointments of Plaintiffs Matthew Audino, Joanna Audino, and Daniel Ogles, Jr. as class representatives, and the law firms of Paul LLP, Rouse Law PC, and Gibbs Law Group LLP as class counsel.

## C. Adequacy of Settlement Notice

Having certified the class for settlement purposes, the Court now turns to the adequacy of the settlement notice. Rule 23 provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;

-14-

(v)      that the court will exclude from the class any member who
         requests exclusion;
(vi)     the time and manner for requesting exclusion; and
(vii)    the binding effect of a class judgment on members under
         Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). As an initial matter, the short-form notice, which was mailed to class

members, and the long-form notice, which appeared on the settlement website, were exhibits to

the Court's Order preliminarily approving the settlement. *See* [ECF No. 91 at 11–24]. Both of

these notices contained the information listed in Rule 23(c)(2)(B).

Additionally, the Court finds that the notice was the best practicable under the

circumstances and that the parties exercised reasonable effort in identifying individual class

members. Defendant was able to identify and provide KCC with the former addresses of each

class member. *See* [ECF No. 95-6 ¶ 3]. This method for identifying class members was sensible,

given that the class members are, by definition, Defendant's former customers, and it is reasonable

to expect Defendant to have maintained the relevant information related to its collection of

post-payment interest from those individuals. After obtaining the list of class members,

KCC processed the names and addresses through the National Change of Address Database. *Id.*

After removing roughly 8500 duplicate records, KCC mailed the short-form notice by first-class

mail to the remaining 367,708 records with postal address to which notice could be sent.

*Id.* ¶¶ 3–4. After undeliverable notices were returned, KCC was able to re-mail 18,585 notices,

resulting in only 19,654 undeliverable notices. *Id.* ¶ 5. With respect to notices that were initially

returned to KCC as undeliverable, it is relevant that KCC was instructed, if no forwarding address

was provided with the returned notice, to perform one skip-trace in order to potentially establish

an alternate address for the class member in question. *See* [ECF No. 95-2 ¶ 7.5]. Given the

parties' reasonable reliance on Defendant's business records to identify class members, and

KCC's efforts to update those records—both before and, in some cases, after initial delivery—the Court finds that the settlement notice satisfies the requirements of Rule 23(c)(2)(B). Furthermore, because that rule closely tracks the requirements of procedural due process under the United States Constitution, the Court also finds that the notice is constitutionally valid. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

As a separate but related matter, the Court also finds that Defendant's CAFA notice satisfied applicable statutory requirements. Under 28 U.S.C. § 1715, defendants in proposed class action settlements must send to certain state and federal authorities the following information: (1) a copy of the complaint and accompanying materials, plus copies of any amended complaints; (2) notice of any scheduled hearing in the case; (3) proposed or final notice to class members of the settlement and their right, if any, to exclude themselves from the settlement; (4) the settlement agreement; (5) any settlement or other contemporaneous agreement between the parties' counsel; (6) any final judgment or notice of dismissal; (7) to the appropriate state officials, the names of class members in each state (or, if that is not feasible, an estimate of the number of class members in each state), and the estimated proportionate share of their claims to the entire settlement; and (8) any judicial opinions relating to items (3)–(6). 28 U.S.C. § 1715(b). No later than ten days after a proposed class action settlement has been filed with a court, the above items must be sent to the Attorney General of the United States, or, where the defendant is a state or federal depository institution, the person with the primary federal regulatory or supervisory responsibility with respect to the defendant, if the matters alleged in the class action relate to that

person's supervision of the defendant. *Id.* § 1715(a)(1). Similarly, notice must also be sent to the state official who has "the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the State, if some or all of the matters alleged in the class action are subject to regulation by that person." *Id.* § 1715(a)(2). However, if there is no such individual, or the matters at issue are not subject that that individual's regulation or supervision, then notice should be sent to the State Attorney General. *Id.* A court may not finalize the class action settlement until ninety days after notice under § 1715 has been served.

Here, ten days after Plaintiffs moved for preliminary approval of the settlement, KCC mailed the CAFA notice to the Attorney General of the United States; the Office of the Comptroller of the Currency; the Consumer Financial Protection Bureau; and the Attorneys General for all fifty states, the District of Columbia, and Puerto Rico. [ECF No. 95-6 ¶ 2]. As to the state officials to whom the CAFA notice was sent, because this action deals with the collection of post-payment interest under federal regulations, the Court is satisfied that the matters at issue fall outside the supervisory responsibility of state banking or licensing officials, and, therefore, KCC appropriately mailed the CAFA notice to the States' Attorneys General. *See* 28 U.S.C. § 1715(a)(2). Furthermore, the Court has reviewed the CAFA notice and is satisfied that it complied with the requirements of § 1715(b). Therefore, the Court finds that Defendant has met its obligations under 28 U.S.C. § 1715.

### D. Evaluation of the Settlement

The Court may only approve the settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Court must consider four factors: (1) "the merits of the plaintiff's case, weighed against the terms of the settlement";

(2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). Settlement agreements are presumptively valid. *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013). "This is particularly so in this case, where the parties settled the case with the aid of an experienced mediator . . . ." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016).

### 1. Merits of Plaintiffs' case, weighed against the terms of the settlement

The first *Van Horn* factor, "'a balancing of the strength of the plaintiff's case against the terms of the settlement,' is '[t]he single most important factor.'" *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017) (alteration in original) (citation omitted). This factor weighs in favor of approving a settlement when "'the outcome of the litigation would be far from certain' if the case had not settled . . . whereas 'the settlement provides substantial benefits to the class.'" *Id.* (citations omitted).

Although Plaintiffs maintain a strong belief in the merits of their case, they candidly acknowledge that they would face substantial hurdles in achieving class certification for the purpose of trial. *See* [ECF No. 95-1 at 13]. To this end, they cite two cases from the United States District Court for the Southern District of Florida that denied class action certification for purported classes asserting claims similar to Plaintiffs' claims here. *See Miller v. Wells Fargo Bank, N.A.*, No. 1:16-cv-21145-UU, 2017 WL 698520 (S.D. Fla. Feb. 22, 2017); *Smith v. U.S. Bank, N.A.*, 1:16-cv-21146-UU, 2017 WL 698530 (S.D. Fla. Feb. 22, 2017).

In those cases, the plaintiffs alleged that the defendant banks failed to provide FHA-compliant notices to borrowers before collecting post-payment interest. *E.g., Smith*,

2017 WL 698530, at *1.[2] They alleged that the relevant HUD regulations governing the form and content of the notices were incorporated into the banks' promissory notes with their borrowers. *Id*. The plaintiffs argued that the banks, by issuing deficient notices, breached the promissory notes when they collected post-payment interest. *Id*. The plaintiffs sought to certify nationwide classes of all borrowers from which the banks improperly collected post-payment interest. *Id*.

The court denied class certification after finding that the predominance requirement in Rule 23(b)(3) could not be satisfied. First, the court found that there were "at least three different divergences in authority among states" as to whether HUD regulations could be incorporated into a contract. *Id*. at *13. The court found that these variations would require it "to determine—on a case-by-case basis, with nuanced analysis . . . whether *each state's law* permits an affirmative breach of contract claim based on incorporated HUD regulations." *Id*. Second, the court found that, in order to prove causation, "each class member would have to demonstrate that Defendant's allegedly inadequate disclosure caused the borrower harm." *Id*. at *14. The court found that this would "inject several individual issues into [the] class action" on which each class member would need to submit evidence. *Id*. Third, the defendants asserted an implied waiver defense, the substantive elements of which varied from state to state and would have required further review of "each class member's individual circumstances." *Id*. at *15. Finally, the court rejected the plaintiffs' arguments that class members could be grouped into subclasses based on similarities in various states' laws, noting in relevant part that the creation of subclasses would do nothing to

---

[2] The orders denying class certification in *Smith* and *Miller* were issued by the same court, on the same day, and are nearly identical. Thus, the Court need only cite to one of them for the purpose of this summary.

mitigate the individualized inquiries that would be required regarding causation and the defendants' affirmative defenses. *Id.* at *16–17.

The Court finds the reasoning in *Smith* and *Miller* to be persuasive and agrees with Plaintiffs that they would have had difficulty certifying a class for the purpose of trial. This is especially the case given the similarity between their claims and the claims of the plaintiffs in *Smith* and *Miller*, and because Plaintiffs' proposed class has no geographic limitation. As has already been discussed, the average class member in this action has no effective means of redress if his or her claim is not pursued collectively, given the expense of litigating relative to the value the claim. Thus, the difficulty Plaintiffs would have faced at the class certification stage takes on an added dimension. As Plaintiffs aptly put it, the denial of class certification was the "death knell" of *Smith* and *Miller*. [ECF No. 95-1 at 13]. So, too, might the denial of class certification have tolled the end of this action.

Turning to the terms of the settlement, Defendant has agreed to pay $11.22 million into a common settlement fund. [ECF No. 95-2 ¶ 3.2]. All settlement class members will receive a "Minimum Distribution" of $5. *Id.* ¶ 5.2.1. In addition, class members from whom Defendant collected more than $50 in post-payment interest will receive an "Enhanced Distribution," which is a *pro rata* proportion of the common fund (less deductions for attorney's fees and other expenses) based on the amount of post-payment interest Defendant collected from each such class member. *Id.* ¶ 5.2.3.

In arguing that the settlement is adequate, Plaintiffs emphasize the average recovery relative to the entire settlement fund. *See* [ECF No. 95-1 at 14]. Specifically, they cite to an

average per-loan recovery of approximately $29.83.[3]  *Id.*  This figure constitutes an approximate

13% recovery of the average $229.67 post-payment interest that Defendant collected per loan in

the settlement class.  *Id.*  Plaintiffs proceed to cite numerous cases where courts have approved

settlements that awarded smaller percentages of the total potential damages.  *See, e.g.*, *In re*

*BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 699 (E.D. Mo. 2002) (approving class settlement

awarding    10%    of    damages    owed);    *In re    Newbridge    Networks    Secs.    Litig.*,

No. CIV. A. 94-1678-LFO,  1998  WL 765724,  at *2 (D.D.C. Oct. 23, 1998) (observing that "an

agreement that secures roughly six to twelve percent of a potential recovery seems to be within the

targeted range of reasonableness").

However, the average recovery based on the total settlement fund is a questionable marker

because significant  portions  of the fund  are not  available to all class members.  Notably, the

settlement agreement calls for the following  deductions  from the common fund before Enhanced

Distributions  are calculated: (1) any awarded attorney's fees and expenses; (2) service awards;

(3) payments to the settlement administrator;  and (4) Minimum  Distribution  payments.  *See* [ECF

No. 95-2 ¶¶ 5.2.2, 5.2.3].  Setting aside the Minimum  Distribution  payments, the remaining

deductions  leave only $7,595,555.19  to be shared amongst the class.[4]  Using this figure, the

average recovery per loan is not $29.83, but approximately  $20.19.[5]  This is only 8.79% of the

---

[3] *I.e.*, $11,220,000  ÷ 376,137  loans = $29.8295/loan.

[4] $11,220,000  −  ($15,000  service  awards to Plaintiffs  +  $3,141,600  for attorney's
fees + $29,153.83  for attorney's costs and expenses + $438,690.98  for the costs of administering
the settlement).  *See* [ECF Nos. 92 at 1; 95-6 ¶ 7].

[5] $7,595,555.19  ÷ 376,137.

$229.67 average amount of post-payment interest Defendant collected per loan in the settlement class.

At the same time, such broad averages are too abstract to accurately summarize the class recovery. It is more helpful to consider the settlement with reference to the types of proposed distributions. For example, the Court has no issue with some class members receiving only the $5 Minimum Distribution. Because Defendant will have collected no more than $50 in post-payment interest from those class members, they can receive no less than 10% of their purported damages. With respect to Enhanced Distributions, the parties estimate that Defendant collected roughly $289.31 in post-payment interest on loans that are eligible for Enhanced Distributions. They further estimate that the average Enhanced Distribution will be approximately $24.63. Adding the $5 Minimum Distribution to that figure, the average recovery on loans that qualify for the Enhanced Distribution will be $29.63, or roughly 10.24% of the average amount of post-payment interest Defendant collected on such loans. As Plaintiffs point out, courts, including those in this circuit, have approved similarly-proportioned recoveries. *See, e.g.*, *BankAmerica Corp.*, 210 F.R.D. at 699.

Although the value of these payments may appear low, the Court's evaluation of the settlement agreement is a relative one: the Court must consider the settlement against the merits of Plaintiffs' claims. As noted above, there is a very real chance that many, if not most, class members would recover nothing if not for this settlement. "In this respect, the settlement strikes a reasonable balance between, on the one hand, the hypothetically significant but risky benefits of litigation, and on the other, the certain and immediate benefits of the class-wide relief." *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 446 (S.D. Iowa 2001). Thus, the Court finds that the first *Van Horn* factor weighs in favor of the settlement.

## 2.   Defendant's financial condition

The second *Van Horn* factor requires the Court to consider Defendant's financial condition. There is no dispute that Defendant is financially capable of either paying the settlement or continuing this litigation.   [ECF No. 95-1 at 12].   Thus, this factor is neutral in the Court's evaluation of the settlement.   *See Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (finding the defendant's financial condition to be a neutral factor when the defendant was "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation").

## 3.   The complexity and expense of further litigation

When Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement in June 2018, the parties had been litigating this matter for over a year and a half.   Yet, the case had only minimally advanced toward trial.   Discovery was at an early stage and not progressing smoothly, as demonstrated by Plaintiffs' filing a Motion to Compel Discovery.   *See* [ECF No. 62]. Further, Plaintiffs had not yet moved for class certification.   It is not clear that they would have reached that stage because at the time the parties began settlement negotiations, Defendant's Motion to Strike Plaintiffs' Class Allegations was still pending.   *See* [ECF No. 51].

The most complex phases of this litigation still lie ahead. If the Court rejects the settlement and denies Defendant's Motion to Strike, the parties will proceed to discovery and the class certification process.   Plaintiffs suggest these steps will include "numerous depositions" and analysis by expert witnesses of "large amounts of data." [ECF No. 95-1 at 17].   There is little doubt that, as Plaintiffs suggest, "the parties' briefing on certification of a multi-state class will certainly be extensive." *Id.* Should the matter continue past that point, Plaintiffs estimate that a class trial would last between seven and ten days. *Id.* Taking into account potential appeals along

the way, the parties face a very long and expensive undertaking before this matter is resolved. In contrast, the settlement provides the class with the opportunity to avoid that delay and obtain partial, but certain, recovery. Thus, this factor favors approval of the settlement.

### 4. Objections

The final *Van Horn* factor requires the Court to consider any objections to the settlement. After removing duplicate records, KCC mailed notice of the settlement to 367,708 addresses. [ECF No. 95-6 ¶ 3]. Only 19,654 were ultimately undeliverable. *Id.* ¶ 4. Thus, just under 95% of the notices were successfully transmitted. Against that background, no class members objected to the settlement and only seventeen opted out. [ECF No. 95-1 at 17–18]. The Court has reviewed each of the seventeen opt-out notices, and none of them included criticisms of the settlement. *See* [ECF Nos. 98; 98-1]. Thus, given the dearth of objections, the fourth factor also favors approval of the settlement.

### 5. Totality of the *Van Horn* factors

In conclusion, three of the *Van Horn* factors weigh in favor of approving the settlement, with a fourth factor being neutral. The Court therefore finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### E.    *Attorney's Fees and Expenses*

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Plaintiffs move for an award of attorney's fees in the amount of $3,141,600, or 28% of the settlement fund, plus $29,153.83 for their counsels' costs and expenses in pursuing this litigation. [ECF No. 95-1 at 9]. If the motion is granted, these amounts will be paid out of the settlement fund before Enhanced Distributions are calculated. *Id.*

1.  Attorney's fees

Courts in the Eighth Circuit rely on two main approaches when analyzing a request for attorney's fees: (1) the "lodestar" method, which looks at the hours expended by an attorney multiplied by a reasonable hourly rate of compensation; and (2) the "percentage of the benefit" method, which allows for an award that is a percentage of a common settlement fund. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244–45 (8th Cir. 1996). "It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement . . . ." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999). District courts may also use the "lodestar" approach to verify the reasonableness of a percentage-of-the-fund award. *See id.* (noting that "use of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the fund' method").

Although the Eighth Circuit has not established the factors that a court should consider when determining the reasonableness of a proposed award under the percentage-of-the-fund method, it has expressly approved the use of the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), for assessing awards of attorney's fees in other contexts. *See, e.g.*, *Zoll v. E. Allamakee Cmty. Sch. Dist.*, 588 F.2d 246, 252 (8th Cir. 1978) (approving the use of the *Johnson* factors for determining an award of attorney's fees under 42 U.S.C. § 1988). Thus, district courts in this circuit have looked to the *Johnson* factors when analyzing proposed awards of attorney's fees in class action settlements. *See, e.g.*, *Huyer*, 314 F.R.D. at 628–29; *Lewis v. Heartland Inns of Am., L.L.C.*, 764 F. Supp. 2d 1037, 1043–44 (S.D. Iowa 2011).

There are twelve *Jonson* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

-25-

> contingent, (7) time limitation imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

*Zoll*, 588 F.2d at 252 n. 11 (citing *Johnson*, 488 F.2d at 717–19). Not every *Johnson* factor will be relevant to a given case, thus "the court has wide discretion as to which factors to apply and the relative weight to assign to each." *In re Xcel Energy, Inc., Secs., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 993 (D. Minn. 2005); *see also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (finding no error in an award of attorney's fees when the district court analyzed seven of the *Johnson* factors and cross-checked the proposed award against the lodestar method). To that end, many courts in this circuit have focused on the following seven factors, some of which are derivatives of one or more of the *Johnson* factors: (1) the benefit conferred on the class; (2) the risk to which plaintiffs' counsel are exposed; (3) the difficulty and novelty of the issues in the case; (4) the skill of the lawyers involved; (5) the time and labor involved; (6) the reaction of the class; and (7) awards in similar cases. *See Caligiuri*, 855 F.3d at 866; *In re Xcel Energy*, 364 F. Supp. 2d at 993.

The Court finds that not only are those seven factors relevant here, but they also support a finding that the proposed award of attorney's fees is fair and reasonable. First, as has already been stressed, the settlement represents an immediate and certain recovery for the class where outstanding procedural hurdles pose a legitimate threat to any meaningful recovery for individual class members. Second, Plaintiffs' counsel have been pursuing this matter on a contingent fee basis and have thus been exposed to significant risk of being both left uncompensated for their extensive work on this matter, and unable to recover their out-of-pocket costs.

The severity of the risk to Plaintiffs' counsel is better understood after considering the third factor—the difficulty and novelty of the issues in this case. Plaintiffs assert that, in order to succeed in this action, they would need to prove, under the laws of all fifty states, that the violation of federal regulations incorporated into HUD contracts could form the basis of a breach of contract claim. *See* [ECF No. 92-1 at 22]. Defendant has already identified case law contrary to this position, albeit in the context of mortgage foreclosures. *See, e.g.*, *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 541 (Md. 2007); *ABN Amro Mortg. Grp., Inc., v. Tullar*, No. 06-0824, 2009 WL 1066511, at *4 (Iowa Ct. App. 2009) (table decision). Although the Court has found Plaintiffs' claims are viable under Iowa law, it has made no determination as to the laws of other states. *See* [ECF No. 41 at 11–12]. Other district courts considering this issue have found that at least some states would not recognize a breach of contract claim based on incorporated HUD regulations. *See Smith*, 2017 WL 698530, at *12 ("Still, other courts have refused to recognize *any* cause of action or defense based on a theory of breach of [contract] based on incorporated HUD regulations."). Even if these substantive issues fell in Plaintiffs' favor, it is far from certain that Plaintiffs would be able to certify their proposed class for the purpose of trial.

The fourth and fifth factors—the skill of the attorneys and the time and labor involved—also favor the proposed award. Paul LLP practices exclusively in the area of complex state and federal litigation; Gibbs Law Group practices exclusively in commercial and class action litigation; and Rouse Law PC has served as local counsel in various multi-district mass tort and class actions. *See* [ECF Nos. 95-4 ¶ 4; 95-5 ¶¶ 2, 7; 92-4 ¶ 2]. Moreover, defense counsel from McGuire Woods LLP are highly experienced attorneys, not only with respect to complex litigation and class actions, but also as to matters involving Defendant's collection of post-payment interest. *See* [ECF No. 92-1 at 25]. Although this matter is settling at a relatively early stage of litigation,

-27-

Plaintiffs' attorneys collectively expended over 2000 hours litigating and settling this matter. *Id.* That time was spent, *inter alia*, investigating the facts of this matter, researching the relevant law, resisting Defendant's Motion to Dismiss, reviewing and analyzing materials produced by Defendant, preparing for and participating in an all-day mediation, and negotiating the terms of the settlement. *See id.* at 9, 12–13, 26–27.

As to the last two factors, there has been no objection to the proposed award of attorney's fees; thus the sixth factor favors approval. Finally, the award is reasonable when compared to percentages awarded in other common-fund settlements. Courts in the Eighth Circuit "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010); *accord In re Xcel Energy*, 364 F. Supp. 2d at 998; *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming as reasonable a fee award representing 36% of the settlement fund); *Huyer*, 314 F.R.D. at 629 (awarding attorney's fees in the amount of 33 1/3% of the common settlement fund). Because the proposed award here is well within the range of reasonable percentage-fee awards in his circuit, this factor favors approval.

In terms of a lodestar cross-check, based on the respective fee earners' hourly rates, the lodestar value for Plaintiffs' counsels' work on this matter is $934,773.25. [ECF No. 92-1 at 28]. The proposed percentage-of-the-fund award is $3,141,600, a multiplier of roughly 3.36 times the lodestar value. That multiplier is reasonable here. Courts in this circuit and elsewhere have approved multipliers greater than four. *See In re Xcel Energy*, 364 F. Supp. 2d at 999 (approving multiplier of 4.7 and citing other class action cases approving multipliers ranging from 4.3 to 6.96). Additionally, Plaintiffs' counsel reasonably believe that their work on this matter is incomplete. They assert that they expect to spend additional hours administering the settlement and responding

to further inquiries from class members. [ECF No. 92-1 at 29]. As a result, the lodestar value will further increase, thus resulting in a lower multiplier.

In conclusion, the Court finds the proposed award of attorney's fees to be reasonable for the purpose of Rule 23(h). The Court therefore GRANTS Plaintiffs' Motion for an Award of Attorney's Fees in the amount of 28% of the settlement fund, or $3,141,600.

## 2.   Costs and expenses

As noted above, Plaintiffs' counsel also request $29,153.83 for their costs and expenses in litigating this matter. "Courts generally allow plaintiffs' counsel in a class action to be reimbursed for costs and expenses out of the settlement fund, so long as those costs and expenses are reasonable and relevant to the litigation." *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT/TNL), 2016 WL 1637039, at *12 (citing *Yarrington*, 697 F. Supp. 2d at 1067). Here, Plaintiffs' counsel incurred numerous expenses of the type normally passed along to hourly-paying clients, including expenses for airfare, photocopies, court fees, lodging, and legal research. *See* [ECF Nos. 92-2 ¶ 29; 92-3 ¶ 20; 92-4 ¶ 6]. The Court has reviewed the amounts of these expenses and finds that they are reasonable. Accordingly, the Court GRANTS Plaintiffs' motion for an award of costs and expenses in the amount of $29,153.83.

## F.   Service Awards to Class Representatives

Finally, as class representatives, Plaintiffs each seek service awards of $5000, to be paid out of the settlement fund. "Small incentive awards, which serve as premiums to any claims-based recovery from the Settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Yarrington*, 697 F. Supp. 2d at 1068. Here, Plaintiffs collectively reviewed their respective mortgage documents, communicated with escrow agents and other third parties regarding Defendant's collection of post-payment interest, maintained frequent

communication with counsel, reviewed transcripts of depositions taken by defense counsel in other matters, and scrutinized the proposed settlement. *See* [ECF Nos. 92-4 ¶ 4; 99 ¶¶ 2–9]. The Court is also mindful that the proposed $5000 service awards, in a settlement of $11.22 million, are lower than awards approved by other courts in this district in common-fund cases. *See, e.g.*, *Huyer*, 314 F.R.D. at 269 (approving service awards of $10,000 per named plaintiff in settlement of $25.75 million); *Jones v. Casey's Gen. Stores*, 266 F.R.D. 222, 231 (S.D. Iowa 2009) (approving $10,000 service awards to each of nine plaintiffs from settlement fund of $5 million). Accordingly, the Court finds that service awards of $5000 are appropriate here.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Approval of Class Action Settlement, [ECF No. 95], and Motion for Approval of Attorney's Fees and Expenses, and Service Awards to Class Representatives, [ECF No. 92], are GRANTED pursuant to the following:

1.   **Definitions**. This Judgment incorporates by reference the definitions in the Agreement, and all capitalized terms used, but not defined herein, shall have the same meanings as in the Agreement.

2.   **Jurisdiction**. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members, and venue in this Court is proper.

3.   **No Merits Determination**. By entering this Order, the Court does not make any determination as to the merits of this case.

4.   **Settlement Class**. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies this Action as a class action, with the Class defined as the collective group of all persons who had an FHA-Insured Loan for which (i) the FHA-Insured Loan was closed before January 21, 2015; (ii) Chase or its predecessor was the mortgagee or servicer as of

-30-

the date the total amount due on the FHA-Insured Loan was brought to zero; (iii) Chase collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period; and (iv) the total amount due on the FHA- Insured Loan was brought to zero on or after July 5, 2009, and on or before March 30, 2018. Excluded from the Class are Chase, all officers, directors, and employees of Chase, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

5. **Designation of Class Representatives and Class Counsel**. The Court confirms the prior appointments of the Plaintiffs Matthew Audino, Jonna Audino, and Daniel Ogles, Jr. as Class Representatives, and the law firms of Paul LLP, Rouse Law PC, and Gibbs Law Group LLP as Class Counsel.

6. **Settlement Approval**. Pursuant to Federal Rule of Civil Procedure 23, this Court hereby APPROVES the Settlement set forth in the Agreement and finds that the Settlement is, in all respects, fair, reasonable, and adequate to the Parties. The Court further finds that the Settlement set forth in the Agreement is the result of good faith arm's-length negotiations between experienced counsel representing the interests of the Parties. Accordingly, the Settlement embodied in the Agreement is hereby finally approved in all respects, there is no just reason for delay, and the Parties are hereby directed to perform its terms.

7. **Dismissal with Prejudice**. Final Judgment is hereby entered with respect to the Released Claims of all Settlement Class Members, and the Released Claims in the Action are hereby dismissed in their entirety with prejudice and without costs. All claims in the Action are dismissed, and the case shall be closed. Nothing herein is intended to waive or prejudice the rights of Class Members who have timely excluded themselves from the Class, as identified in Exhibit 1 hereto.

8. **Releases**. The releases as set forth in Section 10 of the Agreement together with the definitions in Sections 1.1–1.38 relating thereto are expressly incorporated herein in all respects and made effective by operation of this Judgment.   The Court hereby approves the release provisions as contained and incorporated in Section 10 of the Agreement, including but not limited to the definitions of Released Claims, Releasors, Releasees and Unknown Claims.  The Releasors shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims (including Unknown Claims) against the Releasees.

9. **Permanent Injunction**.  The Releasors, including the Class Representatives and all Settlement Class Members, and anyone claiming through or on behalf of any of them, are forever barred and enjoined from filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise) any action in any jurisdiction for the Released Claims.  The Releasors further are forever barred and enjoined from organizing Settlement Class Members, or soliciting the participation of Settlement Class Members, or persons who would otherwise fall within the definition of Settlement Class Members but who have requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action (including by seeking to amend a pending complaint or counterclaim to include class allegations, or seeking class certification in a pending action in any jurisdiction) based on or relating to any of the Released Claims.

10. **Approval of Class Notice**.  The form and means of disseminating the Class Notice as provided for in the Order Preliminarily Approving Settlement and Providing for Notice constituted the best notice practicable under the circumstances, including individual notice to all Class Members who could be identified through reasonable effort. Said Notice provided the best notice

practicable under the circumstances of the proceedings and the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.

11. **Attorney's Fees and Expenses**. The Court finds that an award of $3,141,600 in attorney's fees and $29,153.83 in expenses is fair and reasonable, and the Court approves of Class Counsel attorney's fees and expenses in these amounts.

12. **Class Representative Service Awards**. The Court finds that a service award for Matthew Audino, Jonna Audino, and Daniel Ogles, Jr. in the amount of $5000 each is fair and reasonable, and the Court approves of the service award in this amount. The Court directs the Settlement Administrator to disburse this amount to Mr. Audino, Ms. Audino, and Mr. Ogles as provided in the Settlement Agreement.

13. **Use of Order**. Neither this Order, the fact that a settlement was reached and filed, the Agreement, nor any related negotiations, statements or proceedings shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Chase. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. In no event shall this Order, the fact that a settlement was reached, the Agreement, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way be used, offered, admitted, or referred to in the Action, in any other action, or in any judicial, administrative, regulatory, arbitration, or other proceeding, by any person or entity, except by the Parties and only the Parties in a proceeding to enforce the Agreement.

14. **Continuing Jurisdiction**.  Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose, including to ensure compliance with the Protective Order.

15. **Termination of Settlement**. In the event that the Settlement does not become effective in accordance with the terms of the Agreement, or the Agreement is terminated pursuant to Section 13 of the Agreement, the Parties shall be restored to their respective positions in the Action prior to the execution of the Agreement, the certification of the Settlement Class shall be automatically vacated, and this Judgment shall be rendered null and void (except Paragraph 14 of this Order shall remain in effect) to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

16. **Implementation of the Agreement**. The Parties are hereby authorized to implement the terms of the Agreement.

17. **Reasonable Extensions**.Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

18. **Class Action Fairness Act Notice**.Chase has provided notification to all appropriate federal and state officials regarding the Settlement as required by 28 U.S.C. § 1715.

19. **Class Notice List**. No later than thirty (30) days after the Effective Date (as defined in the Agreement), the Settlement Administrator shall file with this Court, under seal pursuant to the Protective Order entered in this litigation (in order to protect the names, addresses, and other personal information of Class Members), a list of the names and addresses of all Class Members to whom the Notice was sent.

20. **Entry of Final Judgment**.   There is no just reason for delay in the entry of this Order and Final Judgment and immediate  entry by the Clerk of the Court is hereby directed.

21. **Action Closed**.  The Clerk of the Court is hereby directed to close the Action.

IT IS SO ORDERED.

Dated this 14th day of November, 2018.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT

EXHIBIT 1

Exhibit 1
Exclusions

1. Thomas and Chasity Norton
2. William and Kathryn Bartosh
3. Mark Shallcross
4. Pamela Ashburn
5. Alejandro Alvarado Jr.
6. Donald Kilgallon (by executor of estate)
7. Jolene Cecelia Jacoby
8. Katherine Tillman
9. Rita McDaniel
10. Richard and Sheri Bayes
11. David and Patricia Herd
12. Rodolfo and Magdalena Pena Jr.
13. Nandi Rogers
14. Bonita Raines-Torpe
15. Emma McLemore
16. Chris Sheetinger
17. Jill Rosenberger